## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**LORI MICHELE LANEY,**

**Plaintiff,**

**v.**                                                   **Civil Action No. 3:09-00780**

**MICHAEL J. ASTRUE,**
**Commissioner of the Social**
**Security Administration,**

**Defendant.**

### MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security (hereinafter the "Commissioner") denying Claimant's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. (Docket No. 2). Both parties have consented in writing to a decision by the United States Magistrate Judge. (Docket Nos. 8 and 9). The case is presently pending before the Court on the parties' cross motions for judgment on the pleadings as articulated in their briefs. (Docket Nos. 16, 17 and 20).

I.   **Procedural History**

Plaintiff, Lori Michele Laney (hereinafter "Claimant"), filed applications for DIB and SSI on April 23, 2007, alleging disability beginning November 23, 2006 due to "degenerative disc disease, bulging and ruptured disc, and migraines." (Tr. at 108-116 and 135). The claims were denied initially on July 18, 2007 (Tr. at 63-67 and 68-72) and

1

upon reconsideration on August 31, 2007. (Tr. at 75-77 and 78-80). Thereafter, Claimant requested an administrative hearing. (Tr. at 57-58). The hearing was held on October 9, 2008 before the Honorable Michelle Cavadi (hereinafter the "ALJ). (Tr. at 23-56). By decision dated December 16, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 10-22).

The ALJ's decision became the final decision of the Commissioner on May 13, 2009 when the Appeals Council denied Claimant's request for review. (Tr. at 1-5). On July 7, 2009, Claimant brought the present civil action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Docket No. 2). The Commissioner filed an answer to Claimant's complaint and a transcript of the administrative proceedings.   (Docket Nos. 12 and 13).   The Claimant moved for Judgment on the Pleadings (Docket No. 16), and both parties have filed their briefs in support of judgment on the pleadings. (Docket Nos. 17, and 20). The matter is, therefore, ripe for resolution.

## II.    <u>Summary of ALJ's Decision</u>

Under 42 U.S.C. § 423(d) (5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months" 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. § *Id.* 416.920(a).

2

The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 416.920(b). If the claimant is not engaged in substantial gainful employment, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 416.920(e).

By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review." 20 C.F.R. § 404.1520a. First, the SSA evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable

3

mental impairment. If such impairment exists, the SSA documents its findings. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines the severity of the limitation. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning, and concentration, persistence or pace) and "none" in the fourth (episodes of decompensation) will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the SSA compares the supportive medical findings, along with the impairment's rating, degree, and attendant functional limitations, to the criteria of the most similar listed mental disorder to determine if the severe impairment meets or equals the listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520a(d)(3).

In this particular case, the ALJ determined that Claimant had not engaged in substantial gainful activity since November 23, 2006, the alleged onset date, and that she met the insured status requirements of the Social Security Act through September 30, 2011. (Tr. at 15, Finding Nos. 2 and 1). Under the second inquiry, the ALJ found that Claimant had severe impairments of (1) degenerative disc disease of the lumbar spine, (2) anxiety, (3) depression, and (4) polysubstance abuse. (Tr. at 15, Finding No. 3). At

4

the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16, Finding No. 4). The ALJ then found that Claimant had the residual functional capacity (hereinafter "RFC") to perform "light work" as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that out of an 8 hour workday, she could only stand/walk and sit up for 6 hours; she could not climb ropes, ladders, or scaffolds; she could only occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; she should avoid even moderate exposure to hazards; she could not have public contact; she could sustain only routine changes in the work place; and she could only perform work that could be learned in 1 to 2 steps. (Tr. at 18, Finding No. 5).

As a result, the ALJ accepted the vocational expert's testimony that Claimant could not return to her past relevant employment as an apartment cleaner, telemarketer, and stock handler. (Tr. at 21, Finding No. 6). The ALJ considered that Claimant, who was 40 years old on the alleged disability onset date, was defined as a "younger individual" aged 18-49 in 20 C.F.R. 404.1563 and 416.963, had a limited education, and could communicate in English. (Tr. at 22, Finding Nos. 7 and 8). The ALJ concluded that transferability of job skills was not an issue under 20 C.F.R. 404.1568 and 416.968.[1] (Tr. at 22, Finding No. 9). Accordingly, based on the testimony of the vocational expert, the ALJ found that Claimant could make a successful adjustment to other work that exists in significant numbers in the national economy,

---

[1] The Medical-Vocational Rules supported a finding that she was not disabled regardless of whether she had transferable job skills.

such as office helper, housekeeper/cleaner, bench worker/laborer, and assembler. (Tr. at 23, Finding No. 10). Consequently, the ALJ denied benefits. (Tr. at 23).

## III.     Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying Claimant's applications for benefits is supported by substantial evidence. In *Blalock v. Richardson*, 483 F.2d 773 (4th Cir. 1972), substantial evidence was defined as the following:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Blalock v. Richardson, *supra* at 776, quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  The decision for the Court to make is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart,* 434 F. 3d 650,653 (4th Cir. 2005), citing *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 2001).

Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990). The Court will not re-weigh conflicting evidence or substitute its judgment for that of the Commissioner. *Id.* However, the Court must not "escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch,* 495 F.2d 396, 397 (4th Cir. 1974). The ultimate question for the Court is whether the decision of the Commissioner is well-grounded, bearing in mind that "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility

for that decision falls on the [Commissioner]." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).

A careful review of the record reveals that the decision of the Commissioner is supported by substantial evidence.

## IV.   **Claimant's Background**

Claimant was forty-two years old at the time of her administrative hearing. (Tr. at 28). She completed the tenth grade and one semester of court reporting classes at the Huntington Junior Business College. (Tr. at 28-29). Her past relevant work experience consisted of cleaning/housekeeping, telemarketing, and stocking and performing cashier duties at a grocery store. (Tr. at 30).

## V.   **The Medical Evidence**

The Court has reviewed all of the evidence of record in its entirety, including the medical evidence. Following is a summary of the Claimant's relevant health care history.

On January 4, 2006, Claimant presented to the Emergency Room at St. Mary's Medical Center ("SMMC") complaining of a back injury. She reported that two weeks earlier, while she was helping a friend remodel his house, a door hit her in the lower back. (Tr. at 207). She described having constant pain since the injury, which had grown worse in the last two days. (*Id.*). An x-ray revealed degenerative disc disease, with no apparent fractures. Claimant was diagnosed with a lumbar strain and given an injection of Toradol. (Tr. at 208).

On June 5, 2006, Claimant came to SMMC's Emergency Room, stating that she had suffered from back pain "for a couple of years," but "that every time she sees somebody, they tell her it is a muscle" and she "knows it is not a muscle because it

7

continues to hurt." She described her pain as "chronic, but has been worse the last couple of days," because she "was helping someone move over the weekend." (Tr. at 204). She stated that she had been told to get an MRI, but had not done so, because she could not afford it. The examining physician noted tenderness in the low back and diagnosed chronic low back pain. (Tr. at 203-205). Claimant was discharged with prescriptions for Medrol Dosepak and Lortab and was instructed to follow up at the Ebenezer Clinic. (Tr. at 205).

On June 8, 2006, Claimant returned to SMMC's Emergency Room, again complaining of back pain. She indicated that the Lortab that she was given three days earlier relieved her pain, but that she was only given ten pills and was now "out of them." (Tr. at 202). She stated that she injured her back six months ago, causing an aching pain that radiated down both her legs, with occasional numbness and tingling. She reported that she worked as a janitor at a local apartment building. She had not taken off from work, although her pain was worse with movement. (*Id.*). The examining physician diagnosed her with an exacerbation of chronic back pain. (Tr. at 203). She was given prescriptions for Lortab and Flexeril, an excuse from work until June 12, and a referral to Valley Health Systems or John Marshall Medical Center. (*Id.*).

On June 14, 2006, Claimant once again presented to SMMC's Emergency Room. She complained of abdominal and lower back pain that had persisted for ten days. (Tr. at 199). She indicated that she had been seen by Marshall University's Internal Medicine service and was given a muscle relaxant. (*Id.*). She was "angry and belligerent and cursing," because she had not received any pain medication. (Tr. at 199). Her urine screen was positive for bacteria, as well as benzodiazepines and cannabinoid. (Tr. at

200). When the emergency physician questioned her about her drug use, Claimant admitted that she gets "high," and that she had taken a Valium that she found at home and some medication that a neighbor gave to her. (Tr. at 200). She told the examining physician that she had called the emergency room nursing director earlier that day, and the director told her to come to the Emergency Department for pain medication and a neurosurgery referral. The physician agreed to refer her to a neurosurgeon, but stated "that any kind of further workup will be up to them." (*Id.*).  An x-ray of her lumbar spine showed the following:

> No acute abnormality. Mild degenerative changes are noted in the mid to lower lumbar spine. No change from 1/4/06.

(Tr. at 353).

On June 21, 2006, Claimant was seen by Tamra Aman, D.O., at Valley Health Services, for complaints of a bulging disc and back pain.  (Tr. at 220-221).  Claimant reported back pain that was persistent and radiated down both legs.  She requested an MRI in order to find the cause of her pain, so that it could be treated.  She also wanted to be off of work. Claimant expressed concern that she was not being treated well, because of her history of drug abuse. (*Id.*). Despite the fact that Dr. Aman could find no objective signs of a significant back condition, she agreed to schedule Claimant for an MRI of her lower back. (*Id.*).  The MRI, which was completed on June 26, 2006, showed "degenerative disc disease from L3 to S1," with some mild narrowing, subtle disc bulging, and minimal disc desiccation. In addition, a "tear of the annulus in the left posterior paracentral posterolateral region with some subtle protrusion at L5-S1" was noted. (Tr. at 195).

On July 2, 2006, Claimant presented to SMMC's Emergency Department, complaining of unrelenting pain in her back that radiated into her hips.  (Tr. at 196-197). She related having been "bounced around through different physicians being treated like a drug addict when she does have a back injury." (*Id.*). She told the examining physician that an MRI revealed a tear of the annulus and a bulging disc in her low back and she had scheduled an appointment with Dr. Rida Mazagri, a local neurosurgeon, which was to take place on July 27.  The Emergency Department physician diagnosed low lumbar pain secondary to chronic bulging disc at L4-5 and gave Claimant injections of Toradol and Phenergan, with prescriptions for tapering doses of prednisone and twelve Lortab tablets. (Tr. at 197).

Claimant apparently spoke by telephone with Dr. Aman and Dr. Aman's office nurse on July 12, 2006, demanding pain medications.  (Tr. at 214-215).  Dr. Aman documented that Claimant was agitated, verbally abusive, and yelling throughout the conversations.  Dr. Aman had previously warned Claimant about her abusive behavior, so on July 18, 2006, Dr. Aman wrote Claimant a letter informing her that she was terminating the provider/patient relationship due to Claimant's continued verbal abuse. Dr. Aman indicated that she would refer Claimant to a pain clinic and urged her to keep her appointment with Dr. Mazagri. (Tr. at 213).

On July 27, 2006, Claimant was evaluated by Dr. Mazagri.  After completing her examination, Dr. Mazagri concluded that Claimant's back and leg pain were probably related to her degenerative disc disease with a disc bulging at L4-5 and especially at L5-S1, which had an annular tear. (Tr. at 350).   Dr. Mazagri recommended physical

therapy, pain medication on an "as needed" basis, and possibly nerve blocks through a pain management clinic. (*Id.*).

On November 8, 2006, Claimant was given a routine follow-up MRI of her lumbar spine at Tri-State MRI which showed "stable degenerative disc disease L3-4 through L5-S1 with no evidence of herniation or neural impingement." (Tr. at 222).

On January 22, 2007, Claimant went to Cabell Huntington Hospital's Family Practice & Women's Care to become an established patiente. (Tr. at 227-228). She was examined by Dr. Linda Savory, a family medicine specialist. Claimant told Dr. Savory that she had suffered a back injury six months earlier and had seen numerous physicians. (*Id.*). She had quit working and was "stressed to the max." She continued to have back pain that kept her up at night, as well as migraines and "anger problems." (*Id.*). She reported that she was taking Lortab for her pain. Dr. Savory prescribed Klonopin for chronic anxiety and Topamax and Imitrex for Claimant's headaches. Dr. Savory noted that Claimant was looking for a job and seemed "motivated to work." (*Id.*).

On February 26, 2007, Claimant was seen by Marg Weigel, PT, at Associated Physical Therapists, Inc. (Tr. at 223). Ms. Weigel noted that Claimant had a diagnosis of chronic lumbar disc pain and was "trying to get Social Security Disability due to these symptoms." Ms. Weigel never had the opportunity to provide therapy, however, because Claimant discontinued treatment, stating that she "did not like being asked her pain levels all of the time and just wanted someone to listen to her symptoms." (*Id.*).

In April, 2007, Claimant began treatment with Ahmet Ozturk, M.D. at Cabell Huntington Hospital's Regional Pain Management Center, after being referred by Dr.

11

Savory. (Tr. at 231-251).  On April 24, 2007, Dr. Ozturk performed a complete physical examination on Claimant with an emphasis on her musculoskeletal system.  (Tr. at 244-250).  He recommended that Claimant undergo a comprehensive evaluation to include physical therapy and psychological evaluation; diagnostic tests; diagnostic blocks; therapeutic blocks; behavior modification; and medications.  (*Id.*). He noted that Claimant was "not able to work" and had applied for disability.  (Tr. at 239).  Dr. Ozturk's ultimate goal was to return Claimant to work.  (Tr. at 250). He scheduled Claimant for a provocative discography, L3-4 and L5-S1.  (Tr. at 241).

On June 22, 2007, a Department of Disability Services (hereinafter "DDS") physician, Cynthia Osborne, D.O., completed a physical RFC assessment form, finding:

- Claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk and sit with normal breaks for about 6 hours in an 8-hour workday; and push and/or pull an unlimited amount, other than as shown for lift and/or carry.

- Claimant could occasionally climb ramps/stairs/ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl.

- Claimant had no manipulative, visual, or communicative limitations.

- Claimant need not avoid noise or vibration, but should avoid concentrated exposure to extreme heat and cold, wetness, humidity, fumes, and hazards.

(Tr. at 253-256). There was not a treating or examining source statement in the file. (Tr. at 258). Dr. Osborne found Claimant's complaints to be only "partially credible," because the degree of limitation that she stated was not supported by the medical evidence of record. (Tr. at 259). In Dr. Osborne's opinion, Claimant could perform "light work" with the limitations noted.  *Id.*

On July 10, 2007, David Frederick, Ph.D., completed a psychological consultative examination report at the request of DDS.  (Tr. at 261-263).  Dr. Frederick described Claimant as sullen, irritable, and angry, but noted that she was cooperative during the evaluation. Her mental status examination was essentially normal.  She described symptoms of anxiety and panic disorder, stating that she had no money and felt loved by "nobody."  (Tr. at 263).  Dr. Frederick diagnosed Claimant with Major Depressive Disorder, single episode, moderate; Anxiety Disorder NOS, and Panic Disorder without Agoraphobia. He felt her prognosis was poor.  (*Id.*).

On July 17, 2007, DDS psychologist Frank Roman, Ed.D., completed a psychiatric review technique form, finding that Claimant suffered from non-severe depression and anxiety, which rendered her mildly restricted in "activities of daily living;" "maintaining social functioning;" and "maintaining concentration, persistence or pace." (Tr. at 267, 269, and 274). Claimant had no "episodes of decompensation." (Tr. at 274). Dr. Roman stated that based on the medical evidence of record, Claimant was "credible and capable," that her activities of daily living appeared "to be limited mainly by physical pain and discomfort," and that she was "angry over her back pain." (Tr. at 276). He further stated that from "a psych viewpoint," she appeared to be "able to follow routine work duties in a low stress setting that will accommodate her back pain." (*Id.*).

On August 27, 2007, DDS physician Uma Reddy, M.D., completed a physical RFC assessment, affirming Dr. Osborne's June 22, 2007 findings, except that Dr. Reddy added that Claimant could never climb ladders/ropes/scaffolds or crawl and that she need not avoid wetness, humidity, noise or fumes, but she should avoid concentrated

13

exposure to extreme heat and cold and vibration, and avoid even moderate exposure to hazards. (Tr. at 297-300). Dr. Reddy stated:

> 41 years old with back pain and DDD, credible but not disabling. She is on pain meds as needed, gait is okay, no significant neuro deficit.

> Her ADLs indicate that she lives alone and takes care of self, can cook and does light house work, RFC is reduced depending on the whole picture. No listing limitations.

(Tr. at 301). Dr. Reddy noted that she considered Dr. Ozturk's opinion in April, 2007 that Claimant was unable to work (*see* Tr. at 239); however, Dr. Reddy noted that she disagreed with that conclusion, stating that "Claimant has work restrictions, but no disabling limitations." (Tr. at 302).

On August 31, 2007, DDS psychologist Debra Lilly, Ph.D., completed a psychiatric review technique form, affirming Dr. Roman's July 17, 2007 findings, except that Dr. Lilly replaced Dr. Roman's diagnosis of non-severe anxiety disorder with non-severe panic disorder, NOS. (Tr. at 311, 313, and 318). In sum, Dr. Lilly noted that "[b]ased upon treating source's statement and that of claimant, there are no significant functional limitations related to a mental disorder." (Tr. at 320).

On October 12, 2007, Dr. Ozturk from Cabell Huntington Hospital Regional Pain Management Center tested "4 levels of [Claimant's] lower lumbar discs" and stated that he believed that the "main pain generator is the L3-L4 disc." (Tr. at 326).

On November 1, 2007, Dr. Linda Savory completed a physical RFC evaluation form, noting that Claimant could occasionally and frequently carry less than ten pounds; stand and/or walk and sit for less than two hours; should alternate between sitting and standing every twenty minutes; could push/pull a limited amount; could rarely climb or balance and could never stoop, kneel, crouch, or crawl; was limited in reaching in all

directions, but otherwise had no manipulative or communicative limitations; and need not avoid extreme heat, humidity or fumes, but should avoid concentrated exposure to noise and moderate exposure to extreme cold, vibration, and hazards. (Tr. at 355).

On March 24, 2008, Rachel Arthur, M.A., at Associates in Psychology and Therapy, Inc., evaluated Claimant at the request of the West Virginia Department of Health and Human Resources. (Tr. at 335-338).  Ms. Arthur administered a series of psychological assessment tools specific to symptoms of anxiety and depression.  Based upon these tools and her interview of Claimant, Ms. Arthur found that Claimant suffered from Depressive Disorder NOS and Generalized Anxiety Disorder. (Tr. at 337). Ms. Arthur noted that Claimant "was very adamant about the fact that her emotional problems do not interfere with her ability to work," although Claimant felt that her constant back pain did prevent her from working.  Claimant "reported no interest in seeking therapy or counseling for her anxiety or depression." (Tr. at 337).

## VI.  <u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the ALJ (1) erroneously assessed Claimant's credibility, (2) failed to properly develop the record regarding Claimant's pain, (3) failed to properly evaluate Claimant's impairments in combination; and (4) improperly rejected the opinions of Claimant's treating physicians. (Pl.'s Br. at 17-18).

The Commissioner responds that (1) substantial evidence supports the ALJ's decision that Claimant's allegations of pain and limitation were not entirely credible, (2) Claimant incorrectly relied upon cases that predate the 1991 Amendments to the Regulations regarding pain and limitation, (3) the ALJ correctly considered Claimant's impairments in combination, and (4) substantial evidence supports the ALJ's decision

that the opinions of Claimant's treating physicians were not entitled to deference. (Def.'s Br. at 12-19).

## VII.  Discussion

### A.  Credibility Assessment

Claimant asserts that the ALJ had no basis for concluding that Claimant's allegations of unrelenting pain and mental impairment were excessive and not fully credible. (Pl.'s Br. at 18).   According to Claimant, her file contains an abundance of objective medical evidence supporting the existence of chronic pain and other disabling conditions which resulted in her inability to work.  (*Id.*).   The Commissioner counters by pointing out that the ALJ fully addressed Claimant's allegations and explained why they were discounted, complying with the relevant regulations.  (Def. Br. at 15-16).

Social Security Ruling 96-7p clarifies the two-step process by which the ALJ must evaluate symptoms, including pain, under 20 C.F.R. §§ 404.1529 and 416.929, to determine their limiting effect on a claimant.  First, the ALJ must establish whether the claimant's medically determinable medical and psychological conditions could reasonably be expected to produce the claimant's symptoms, including pain.  SSR 96-7P.  Once the ALJ finds that the conditions could be expected to produce the alleged symptoms, then the ALJ must evaluate the intensity, persistence, and severity of the symptoms to determine the extent to which they prevent the claimant from performing basic work activities. *Id.* Whenever the intensity, persistence or severity of the symptoms cannot be established by objective medical evidence, the ALJ must make a finding on the credibility of any statements used to support their disabling effect. The Ruling sets forth the factors that the ALJ must consider in assessing the claimant's

16

credibility, emphasizing the importance of explaining the reasons supporting the credibility determination. The Ruling further directs that the credibility determination must be based on a consideration of all of the evidence in the case record. *Id.*

In this case, the ALJ accepted that Claimant's medically determinable impairments could reasonably be expected to cause her alleged symptoms; thus, the ALJ evaluated the intensity, persistence, and limiting effects of Claimant's symptoms to determine the extent to which they prevented her from working. The ALJ found that Claimant's statements concerning the intensity, persistence, and severity of her symptoms were excessive and not credible, because they were inconsistent with other evidence in the record, including descriptions of Claimant's daily activities; the documented location, duration, frequency, and intensity of Claimant's pain; the lack of mental health care and treatment; discrepancies in her reasons for leaving work; inconsistent reports regarding precipitating and aggravating factors; Claimant's history of substance abuse; and the nature of her medications. (Tr. at 18-20). The ALJ cited to specific pieces of evidence contained in the record that caused the ALJ to question Claimant's credibility.  ( *Id*).

When evaluating whether an ALJ's credibility determinations are supported by substantial evidence, the Court is not charged with simply replacing its own credibility assessments for those of the ALJ; rather, the Court must review the evidence to determine if it is sufficient to support the ALJ's conclusions. "In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence . . . or substitute its own judgment for that of the Commissioner."  See *Hays v. Sullivan,* 907 F.2d. 1453, 1456 (4th Cir. 1990).  Because the ALJ had the "opportunity to observe the demeanor

17

and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler,* 739 F.2d 987, 989-990 (4th Cir. 1984), citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D.Va. 1976).

Here, the Court finds that the ALJ's credibility assessment of Claimant was consistent with the applicable regulation, case law, and Social Security Rulings and was supported by substantial evidence. 20 C.F.R. § 416.929(b) (2009); SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence existed in the record that Claimant's complaints of pain did not often correlate well with her level of activity and actions.  For example, Claimant refused to undergo physical therapy to relieve her pain although it had been recommended by two physicians.  She likewise complained to various physicians of chronic, unrelenting pain, yet nonetheless helped a friend move.  Several physicians noted that Claimant's pain symptoms were less apparent when she was distracted.  In addition, during the administrative hearing, Claimant was not forthcoming about her history of marijuana abuse, despite references to it in her medical records.  (Tr. at 19).  All of these incidents were appropriately considered by the ALJ in reaching her conclusions about Claimant's credibility.

### B.    Development of the Record

Claimant next argues that the ALJ did not develop the record regarding Claimant's alleged pain.  She contends that the ALJ failed to inquire about the lumbar injections, pain medications and other treatment modalities used by Claimant to relieve her pain, stating that "[g]iven the absence of a full and complete development of the nature, location and affect of the claimants pain problems, it is respectfully submitted

that the ALJ has simply not properly analyzed and developed the claimant's pain complaints as required by the Regulations." (Pl.'s Br. at 20-21).  The Court does not find this argument to be persuasive.

In *Cook v. Heckler*, 783 F.2d 1168 (4th Cir. 1986), the Fourth Circuit Court of Appeals noted that an ALJ has a "responsibility to help develop the evidence."  *Cook v. Heckler*, *supra* at 1173 (4th Cir. 1986).  The Court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." *Id.*  In *Cook,* the ALJ made a determination that the claimant's arthritis did not meet or equal a listed impairment presumably without having any evidence in the record that was pertinent to the criteria of the listed impairment.  *Id.*  The Court identified some of the medical findings that should have been considered in determining whether or not the claimant met the listed impairment, adding "[w]ithout any of the tests and physician's opinions described above, it is impossible to tell whether Cook meets the requirements in the list of impairments.  It must have been impossible for the ALJ to tell whether she did or did not.  Thus, his failure to ask further questions and to demand the production of further evidence, as permitted by 20 C.F.R. § 404.944, amounted to neglect of his duty to develop the evidence."  The errors of the ALJ in *Cook v. Heckler,* however, were not mirrored in the present case.

While the ALJ in this case had a duty to fully and fairly develop the record, she was not required to act as Claimant's counsel. *Clark v. Shalala,* 28 F.3d 828 (8th Cir. 1994).  The ALJ had the right to assume that Claimant's counsel was presenting

Claimant's strongest case for benefits. *Nichols v. Astrue,* 2009 WL 2512417 *4 (7th Cir. 2009), citing *Glenn v. Sec'y of Health and Human Servs.,* 814 F.2d 387,391 (7th Cir. 1987).  Moreover, the ALJ's duty to develop the record did not mandate that she make specific inquiries into Claimant's treatment modalities, nor search for evidence that is cumulative in nature.  Her duty was to insure that the record contained sufficient evidence upon which she could make an informed decision. *Ingram v. Commissioner of Social Security Administration,* 496 F.3d 1253, 1269 (11th Cir. 2007); See also, *Weise v. Astrue,* 2009 WL 3248086 (S.D.W.Va.).  When considering the adequacy of the record, the Court must look for evidentiary gaps that result in "unfairness or clear prejudice" to the claimant. *Marsh v. Harris,* 632 F.2d 296, 300 (4th Cir. 1980).  Only under these circumstances should the Court remand a case for the failure of an ALJ to adequately develop the record. *Id.*

Moreover, it is Claimant's ultimate responsibility to prove that she is disabled; she bears the burden of providing medical evidence to the Commissioner which establishes the severity of her impairments.  20 C.F.R. §§ 404.1512(a) and 416.912(a). *See Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.")  Similarly, Claimant "bears the risk of non-persuasion." *Seacrist v. Weinberger*, 538 F.2d 1054, 1056 (4th Cir. 1976).

In this case, the ALJ had detailed records of examinations, assessments, consultations, laboratory and radiological studies created by or at the request of Claimant's treating physicians.  Since the bulk of Claimant's medical care revolved

around her complaints of pain, Claimant is hard-pressed to argue that the ALJ did not have sufficient evidence upon which to make an informed decision.   The ALJ clearly reviewed and considered the medical documentation, as she made detailed comments regarding that documentation throughout her written decision.

Furthermore, the ALJ fully discharged her duty to complete the record at the administrative hearing. During the hearing, the ALJ questioned Claimant in detail about the frequency and limiting effects of her alleged pain and inquired about medications and other sources of treatment. (Tr. at 32-35). In addition, the ALJ thoroughly discussed Claimant's alleged pain in her written decision. (Tr. at 18-20).   The record contained ample evidence of Claimant's pain symptoms, complaints and treatment.   The Court finds, therefore, that Claimant's allegation that the ALJ erred by failing to develop the record is without merit.

## C.      Combination of Impairments

In her third assertion of error, Claimant posits that "[e]ven a cursory review of the evidence of record would conclude that all of the claimant's medical problems, when combined, totally disable her and meet or exceed the combination of impairments listing provided by the Social Security Regulations for disability." (Pl.'s Br. at 22). Conversely, the Commissioner argues that Claimant has failed to identify the specific listed impairment that she claims her conditions meet or equal and has likewise failed to provide medical support for her contention.  (Def. Br. at 18-19).

The social security regulations provide:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to

whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. §§ 404.1523, 416.923 (2002).  Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity."  *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974).  The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity.  *Id.*  The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed.  *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

"The Listing of Impairments describes, for each of the major body systems, impairments that are considered severe enough to prevent an adult from doing any gainful activity," *see* 20 C.F.R. §§ 404.1525(a) and 416.925(a) (2008), regardless of age, education or work experience, *see Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).  For a claimant to qualify for benefits by showing that her combination of impairments is "equivalent" to a listed impairment, she "must present medical findings equal in severity to all the criteria for the one most similar listed impairment."  *See Id.* at 531.

Having reviewed the briefs of counsel, the Court agrees with the Commissioner that Claimant falls short of mounting a convincing argument that her impairments meet or equal a listing.  Claimant does not identify a single listing that is purportedly satisfied by the effects of her impairments in combination.  Contrary to Claimant's conclusory statement, the Court finds that the ALJ adequately considered Claimant's impairments alone and in combination.  *See* 20 C.F.R. § 404.1523 (2008).  The ALJ's RFC finding

22

(Tr. at 17) and the hypothetical question that she posed to the vocational expert (Tr. at 51) provide every indication that the ALJ fully complied with her duty to consider Claimant's impairments and their resulting limitations in combination. Therefore, the Court finds that the ALJ's determination that Claimant's impairments considered alone or in combination do not meet an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 is supported by substantial evidence.

### D.    Opinions of Treating Physicians

Claimant's final assertion of error is that the ALJ improperly disregarded the opinions of Claimant's treating physicians, Dr. Linda Savory and Dr. Ahmet Ozturk, and adopted the opinions of non-examining agency consultants. (Pl.'s Br. at 23-24).    In particular, Claimant points to (1) a functional capacity evaluation completed by Dr. Savory that found Claimant's physical capabilities to be more limited than they were assessed to be by the agency consultants; and (2) treatment notes by Dr. Ozturk that purportedly reflect the existence of more severe musculoskeletal and psychological problems than those recognized by the agency consultants. (*Id.*).

 20 C.F.R. §§ 404.1527(d) and 416.927(d) outline how medical opinions will be weighed in determining whether a claimant qualifies for disability benefits.  In general, the Social Security Administration will give more weight to the opinion of an examining medical source than to the opinion of a non-examining source.  *See* 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1).  Even greater weight will be allocated to the opinion of a treating physician, because that physician is usually most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  *See* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Nevertheless, a treating physician's opinion is

23

afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2008).

The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527(d)(2)-(6) and 416.927(d)(2)-(6). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. "A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p. Ultimately, it is the responsibility of the Commissioner, not the court, to evaluate the case, make findings of fact, and resolve conflicts of evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). When a treating source's opinion is not given controlling weight, and the opinions of agency experts are considered, the ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources. . ." 20 C.F.R. §§ 404.1527 and 404.927. The regulations state that the Commissioner "will always give good reasons in

our notice of determination or decision for the weight we give your treating source's opinion." *Id.* §§ 404.1527(d)(2), 416.927(d)(2).

Medical source opinions on issues reserved to the Commissioner are treated differently than other medical source opinions. 20 C.F.R. §§ 404.927(e) and 416.927(e). In both the aforestated regulations and Social Security Ruling 96-5p, the SSA addresses how medical source opinions are considered when they encroach upon these "reserved" issues; for example, opinions on "whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the Listing of Impairments in appendix 1, subpart P of 20 CFR part 404 (the listings); what an individual's residual functional capacity (RFC) is;. . . . and whether an individual is 'disabled' under the Social Security Act. . ." Opinions concerning issues reserved for the Commissioner are never entitled to controlling weight or special significance, because "giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine when an individual is disabled." SSR 96-5p at 2. However, these opinions must always be carefully considered and "must never be ignored." *Id.*

Here, the ALJ complied with the requirements of the social security regulations, both by adequately assessing the opinions of the treating physicians and by explaining why she discounted the opinions of Dr. Savory. Addressing Dr. Savory's opinions regarding Claimant's functional capacity and disability, the ALJ noted that Dr. Savory "did not set forth any objective evidence to support" her statement that Claimant was disabled or to support her assessment of Claimant's RFC. (Tr. at 20). Further, the ALJ

reviewed the objective medical evidence and found that Dr. Savory's RFC assessment was inconsistent with and not supported by that evidence, noting that Claimant had a non-antalgic gait; negative straight-leg raising tests; the ability to walk on her heels and toes; and only mild tenderness over her lower back.  *Id.*  Accordingly, the ALJ properly afforded little weight to Dr. Savory's opinions and gave more weight to the state agency physician's RFC assessment, which the ALJ found was consistent with the medical record in its entirety. (*Id.*).

In regard to Dr. Ozturk, the record does not suggest that the ALJ rejected Dr. Ozturk's opinions.  In fact, she relied upon some of Dr. Ozturk's physical findings in determining Claimant's RFC.  (*Id.*).  Dr. Ozturk did not complete a functional capacity evaluation or express an opinion on the severity of Claimant's work-related limitations. While his progress notes contain some statements regarding Claimant's ability to lift, sit, and work, the Court reads these statements to be nothing more than notations of comments made by Claimant during patient interviews.[2]   (Tr. at 239, 246). These notations were never represented to be Dr. Ozturk's opinions on whether Claimant was disabled.   Accordingly, contrary to Claimant's contention, the ALJ did not reject Dr. Ozturk's opinions.

Considering the nature of the opinions and the analysis performed by the ALJ as documented in her decision, the Court finds that the ALJ complied with the applicable regulations in her contemplation of all of the medical source opinions. In making this

---

[2] Moreover, it is not entirely clear who made a note in the office record that "[t]he patient is not able to work," as this particular record was signed by both Dr. Ozturk and a nurse practitioner.  A nurse practitioner is not an "acceptable medical source" on the issue of disability.  See 20 C.F.R. §§ 404.1502 and 416.902.

determination, the Court reemphasizes that an ALJ is only required to afford controlling weight to a treating physician's opinion if it is supported by clinical and laboratory diagnostic techniques, is not inconsistent with other substantial evidence, and is not an opinion on a matter reserved to the Commissioner.  In the present case, the ALJ did not reject the opinions of Claimant's treating physicians in their entirety and disregarded them only to the extent that they were inconsistent with the evidence of record. Therefore, the Court finds that the ALJ's decision not to afford controlling weight to all of Claimant's treating physicians' opinions is supported by substantial evidence.

## VIII.  **Conclusion**

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision **IS** supported by substantial evidence. Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to transmit copies of this Order to all counsel of record.

**ENTERED**: January 4, 2011.

Cheryl A.  Eifert
United States Magistrate Judge

27